UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:23-23903-BECERRA/GOODMAN

DR. SANDY MONTANO,

      Plaintiff,

v.

WASHINGTON STATE DEPARTMENT
OF HEALTH, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON MOTIONS TO DISMISS

In this civil rights action, *pro se* plaintiff Dr. Sandy Montano ("Montano" or

"Plaintiff")[1] filed a four-count Complaint alleging civil rights violations under 42 U.S.C.

---

[1]     "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Liberal construction, however, does not mean that a court may "act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

§ 1983 (Count One);[2] infliction of emotional distress (Count Two);[3] defamation (Count Three); and liable [sic] *per se* (Count Four). [ECF No. 1].

Certain Defendants moved to dismiss the Complaint. [ECF Nos. 25; 34; 39; 55; 58]. These Defendants are: TEGNA Inc. ("TEGNA"), King Broadcasting Company d/b/a KREM and incorrectly sued as KREM2 News Television Station ("KREM"), and Patrick Henkels ("Henkels") (collectively, the **"News Media Defendants"**); Google LLC and YouTube, LLC (collectively, **"Google"**); Spokane County, Spokane County Sheriff's Office, and Spokane County Sheriff's Deputy Daniel Moman (collectively, **"County Defendants"**); Delta Dental of Washington ("**Delta Dental**"); and Washington State Department of Health, Clark A. Wisswell, Erin Obenland, Lydia Koroma, Dr. David Carsten, Sharon Moysiuk, Shellie Carpenter, and Washington State Board of Health (**"State Defendants"**). Plaintiff filed responses to *some* (but not all) of these motions and *some* Defendants filed optional replies. [ECF Nos. 37; 43; 44; 45; 47].

United States District Judge Kathleen M. Williams referred these motions to the Undersigned "for a report and recommendation." [ECF No. 63]. This case was subsequently reassigned to United States District Judge Jacqueline Becerra [ECF No. 65].

---

[2]     The Undersigned uses Plaintiff's numbering convention, as opposed to the traditional roman numerals.

[3]     It appears that Plaintiff seeks to assert a claim for *intentional* infliction of emotional distress (as opposed to an "infliction of emotional distress"). Nonetheless, the Undersigned will use Plaintiff's label.

For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Becerra **grant in part and deny in part** the motions and **dismiss** the Complaint [ECF No. 1] (albeit **without** prejudice and with **leave** to file an amended complaint, if possible).

## I.      Factual Background[4]

The Complaint invokes this Court's diversity jurisdiction, 28 U.S.C. § 1332, alleging that Plaintiff and Defendants are citizens of different states and that the amount in controversy exceeds $75,000.00. [ECF No. 1, ¶ 3]. It also invokes "supplemental jurisdiction [p]ursuant to Title 28 U.S.C. Section 1367 over all related state counts." *Id.* at ¶ 5. [Despite alleging federal civil rights violations, the Complaint does not invoke this Court's federal question jurisdiction, 28 U.S.C. § 1331.].

The Complaint also alleges that venue in this District is appropriate "[p]ursuant to Title 28 U.S.C. Section 1391(a)(2) where proper venue is determined without regards to whether the action is local transitory [sic] in nature." *Id.* at ¶ 4.

According to the Complaint, Plaintiff

is a member of a protected class, "LGBTQ" as a self-identified gay individual and license dental practitioner in the State of Florida, who suffered a deprivation of his Civil Rights by some . . . [D]efendants who acted in a [sic] "Color of Law" and other [D]efendants who assaulted [ ] [P]laintiff causing him serious physical harm and hospitalization for treatment of a concussion and embezzled money from him[.]

---

[4]      The facts summarized herein are included for context only and the Undersigned makes no factual findings in this Report and Recommendations.

*Id.* at ¶ 29.

It further alleges that Plaintiff purchased a dental practice in Spokane County, Washington. *Id.* at ¶¶ 30–31. He hired Defendants Heather Vincent ("Vincent"), Malenna Palmer ("Palmer"), and Brooklynn Kennedy ("Kennedy") to work at his practice. *Id.* at ¶ 32. Plaintiff alleges that Palmer and Kennedy "engaged in a 'pattern and practice' to embezzle $28,000.00 dollars [sic] of [P]laintiff [sic] funds through a scheme of credit card fraud with office manager, [Vincent]." *Id.* at ¶ 33.

When Plaintiff confronted Palmer and Kennedy about the scheme, "they called the police filing [sic] a false report of assault and the police responded to plaintiffs [sic] dental office to investigate." *Id.* at ¶ 34. After conducting the investigation, the deputy sheriff who responded to the call directed Palmer and Kennedy to return the office keys to Plaintiff and leave the premises. *Id.* at 35–36.

Thereafter, Palmer and Kennedy allegedly filed a false report against Plaintiff with the Washington State Department of Health ("Department of Health"). *Id.* at ¶ 37. On December 1, 2021, the Department of Health Inspector Clark A. Wisswell ("Wisswell") interviewed Plaintiff at his dental practice. *Id.* at ¶ 38–39. He also inspected the office. *Id.*

The following day, "upon information and belief," Wisswell contacted two of Plaintiff's employees, Defendants Charles Villegas ("Villegas") and Jamie Decker ("Decker"), without Plaintiff's knowledge. *Id.* at ¶ 40. According to Plaintiff, Wisswell recruited Villegas to "act as an Agent of [the] Department of Health, intending to gather

4

information against [ ] [P]laintiff. *Id.* at ¶ 41.

On December 3, 2021, the "Dental [B]oard"[5] "concluded . . . that the charges in the false report filed by [Palmer and Kennedy] was [sic] unfounded, with no violations found based on [the] inspection report of December 1, 2021[.]" *Id.* at 39.

On the same day, Villegas allegedly assaulted Plaintiff, inflicting "lacerations" and "abrasions" to Plaintiff's face. *Id.* at ¶ 42. "[B]efore fleeing [the] premises," Villegas told Plaintiff "he was there on behalf of [the Department of Health]." *Id.* at¶ 43.

Plaintiff called the police. *Id.* at ¶ 42. The police "conduct[ed] an investigation on [P]laintiffs' [sic] complaint on assault and battery and gave [] [P]laintiff [sic] receipt of [the] police battery report[.]" *Id.* at ¶ 44. Plaintiff received "hospital treatment" for a concussion. *Id.* at ¶¶ 42, 44.

On the same day (December 3, 2021), Defendant Daniel Moman ("Moman"), a Spokane County Sheriff's Deputy, "filed a false police report on the incident reported by [ ] [P]laintiff involving an assault. Plaintiff was arrested and was released having been given a summons to appear in Court." *Id.* at ¶ 45. That same day, Plaintiff closed his dental practice. *Id.* at ¶ 46. When Plaintiff appeared in court (on an unspecified date), the "District Attorney dropped all charges against [him]." *Id.* at 49.

On December 4, 2021, "Decker hacked into [P]laintiffs [sic] business Facebook

---

[5]     It is unclear whether the term "Dental [B]oard" in paragraph 39 of the Complaint refers to the Department of Health (who conducted the investigation) or Defendant Washington State Board of Health.

account, posted video of [the] assault, and falsely reported that [P]laintiff had assaulted a defendant[, Villegas]." *Id.* at ¶ 47 (capitalization omitted). Villegas "reported that he had injured his knuckles by punching [P]laintiff repeatedly in the head." *Id.* at ¶ 48.

On June 8, 2022, Plaintiff completed medical treatment in Washington State and returned to Florida. *Id.* at ¶ 50.

The Complaint further alleges that on June 22, 2022, the Department of Health "knowingly and intentionally made false public statements by news release on Google, by using its '.gov' site against the [P]laintiff and falsely reported that during inspection of [P]laintiffs [sic] Dental Practice problems were found." *Id.* at ¶ 51. According to Plaintiff, the "Department of Health suppressed [the] 'original' Department of Health Inspection Report and surreptitiously altered the report, documenting violations which were untrue, and which did not appear on [the] 'original' Department of Health Inspection Report which was classified as unfounded." *Id.* at ¶ 52. The "Department of Health falsely reported to the National Practitioners Data Bank that plaintiff committed a crime and that [P]laintiff violated [f]ederal [l]aw." *Id.* at ¶ 54.

These allegedly false charges "were reported on [D]efendant KREM2 Television Station, on You[T]ube and [s]ocial media platforms on June 22, 2022 through June 24, 2022[,] by [D]efendant Reporter Patrick Henkels ('Henkels')." *Id.* at ¶ 55. "[Henkels] also published defamatory articles on [T]witter and all other social media platforms including [G]oogle." *Id.* at ¶ 56.

Plaintiff alleges that Defendants Delta Dental and Guardian Insurance each falsely reported the Department of Health's derogatory information about Plaintiff to the National Practitioners Data Bank, operated by the U.S. Department of Health and Human Resources. *Id.* at ¶¶ 57–59. The publication of this allegedly defamatory information "deprived [Plaintiff] of future and ongoing employment" and due process. *Id.* at ¶¶ 59–60.

According to Plaintiff,

> **all [ ] [D]efendants acted with malice against [ ] [P]laintiff** who is a member of a protected class "LGBTQ" as a self-identified gay individual, causing [ ] [P]laintiff to suffer monetary damages including loss of employment, and a wrongful suspension of his dental practicing privileges in Washington State and is serving to deprive him of future employment as a license practice practitioner [sic] in the State of Florida.

*Id.* at ¶ 61.

Additionally, Department of Health employees (Defendants Erin Obenland, Lydia Koroma, and Wisswell) "all acted with a pattern and practice to deprive [ ] [P]laintiff of a [f]ederal [p]rotected [r]ights [sic] as protect[ed] under Title 42 Section 1983 Civil Rights Act, and maliciously caused false information to be published and spread publicly defaming [ ] [P]laintiff." *Id.* at ¶ 63. Other Department of Health employees -- Defendants Sharon Moysiuk and Shellie Carpenter -- "published a public press release containing false information against [ ] [P]laintiff" and "filed a false report contents [sic] defaming [ ] plaintiff to the National Practitioners Data Bank," respectively. *Id.* at ¶¶ 64–65.

7

Defendant Washington State Board of Health ("Board of Health") is "responsible for investigating Department of Health employee misconduct complaints[.]" *Id.* at ¶ 66. It allegedly "refused to process [ ] [P]laintiffs [sic] written complaint request for an investigation under their own state law." *Id.*

According to Plaintiff, "[D]efendants collectively engineered the false and defamatory publication falsely reporting that [ ] [P]laintiff had engaged in unprofessional conduct assaulted a patient[,] and that Washington State Health Care Facility was violated [sic] for unsafe health conditions, all which are untrue." *Id.* at ¶ 68.

## II.    Applicable Legal Standards

### A.    Fed. R. Civ. P. 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the initial burden of 'alleg[ing] sufficient facts to make out a *prima facie* case of jurisdiction' over the nonresident defendant." *Keim v. ADF MidAtlantic, LLC*, No. 12-80577-CIV, 2016 WL 4248224, at *2 (S.D. Fla. Aug. 10, 2016) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (*per curiam*)).

A *prima facie* case is established if the plaintiff's evidence can withstand a directed verdict motion. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09-22285-CIV, 2010 WL 3452341, at *2 (S.D. Fla. Sept. 1, 2010). The "district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*,

916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). If the parties' affidavits can be "harmonized," then the court can make a decision based on the facts before it. *See Venetian Salami Co. v. J.S. Parthenais*, 554 So. 2d 499, 502–03 (Fla. 1989). However, if the affidavits conflict, then "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara*, 916 F.2d at 1514 (citations omitted).

The analysis of whether personal jurisdiction exists over a nonresident defendant is a two-part determination involving the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Posner*, 178 F.3d at 1214; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).

First, the court must consider whether the forum state's long-arm statute, in this case Florida's long-arm statute, is satisfied. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996). If the requirements of Florida's long-arm statute are met, then the second step is to determine whether there are sufficient minimum contacts to satisfy the Due Process Clause so that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Both must be satisfied before a court may exercise personal jurisdiction over a nonresident defendant. *Robinson*, 74 F.3d at 256 (internal citations omitted).

**B.      Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss

under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[T]he standard 'simply calls for enough fact to raise a reasonable *expectation* that *discovery* will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545) (emphasis supplied). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to [the] plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

10

### III.    Analysis

Pending before the Court are five motions to dismiss. [ECF Nos. 25; 34; 39; 55; 58].

Plaintiff failed to respond to two of those motions. [ECF Nos. 55; 58].

Plaintiff's failure to respond alone is sufficient grounds to grant Delta Dental and

the State Defendants' motions by default. *See* S.D. Fla. L. R. 7.1(c)(1) ("For all motions,

except motions served with the summons and complaint, each party opposing a motion

shall file and serve an opposing memorandum of law no later than fourteen (14) days

after service of the motion. Failure to do so may be deemed sufficient cause for granting

the motion by default." (emphasis added)); *see also Middleton v. Hollywood Rep., LLC*, No.

22-21951-CIV, 2023 WL 6036497, at *2 (S.D. Fla. Aug. 10, 2023) (granting by default the

defendants' motions to dismiss based on the plaintiff's failure to file a response). Because

Plaintiff failed to respond to Delta Dental and State Defendants' dismissal motions [ECF

Nos. 55; 58], the Undersigned **respectfully recommends** that the District Court **grant by**

**default** these two motions to dismiss.

Additionally, and for the reasons discussed below, *all* five motions should be

**granted on the merits**, but Plaintiff should be provided with an opportunity (if possible)

to cure his pleading deficiencies. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291

(11th Cir. 2018) ("Where a more carefully drafted complaint *might* state a claim, a plaintiff

must be given at least one chance to amend the complaint before the district court

dismisses the action with prejudice." (emphasis added)).

A.      **News Media Defendants [ECF No. 25]**

The News Media Defendants seek the with-prejudice dismissal of the claims asserted against them (Counts Two through Four) pursuant to Fed. R. Civ. P. 12(b)(2) and (6). [ECF No. 25]. They also argue that TEGNA (the alleged owner and operator of KREM) should be dismissed because Plaintiff failed to allege any facts which would support the piercing of the corporate veil. *Id.* Lastly, they ask for fees under Florida's anti-SLAPP law. *Id.*

1.      **Lack of Personal Jurisdiction**

A court must have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

12

The News Media Defendants are nonresident defendants.[6] As noted above, "the plaintiff bears the initial burden of 'alleg[ing] sufficient facts to make out a prima facie case of jurisdiction' over the nonresident defendant." *Keim*, 2016 WL 4248224, at *2 (quoting *Posner*, 178 F.3d at 1214). But, as the News Media Defendants note, "Plaintiff has not alleged any facts to support personal jurisdiction over [them]." [ECF No. 25, p. 5].[7]

Florida's long-arm statute is found in section 48.193 of the Florida Statutes. It governs both specific and general jurisdiction. Section 48.193(1) addresses specific jurisdiction resulting from a defendant's acts arising from or relating to that defendant's

---

[6]    The News Media Defendants have introduced unrefuted evidence that: (1) "Henkels is domiciled in the state of Washington and has never lived or worked in Florida;" (2) "KREM is a Washington corporation operating in the greater Spokane County area;" and (3) "TEGNA is a Delaware corporation with its headquarters in Virginia." [ECF No. 25, n.6 (citing declarations from Henkels, KREM's vice president, and the Senior Director of Tax in TEGNA's Finance Department)].

On a Rule 12(b)(2) motion to dismiss, the Court may consider evidence outside the pleadings. *See Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1124 (M.D. Fla. 2021) (stating that on a Rule 12(b)(2) motion to dismiss, "[c]ourts may consider affidavits and other written materials . . ., but they must 'accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.'" (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017))).

[7]    The News Media Defendants also argue that venue in the Southern District of Florida is improper. [ECF No. 25, p. 5 n.5]. But this argument is raised in a footnote. "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022). Moreover, other Defendants have challenged venue. Thus, the Undersigned will address the improper-venue argument when discussing those dismissal motions.

contacts with Florida. Section 48.193(2) addresses general jurisdiction based on a defendant's contacts with Florida, regardless of whether or not the contacts are related to the lawsuit. Florida's long-arm statute is strictly construed and "[the] Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *United Techs. Corp.*, 556 F.3d at 1274).

Plaintiff's Complaint [ECF No. 1] does not cite to Florida's long-arm statute and does not identify which provision(s) of section 48.193 applies to the News Media Defendants (or any Defendant). Determining whether a nonresident defendant is amenable to jurisdiction is a two-step inquiry. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Plaintiff must first show that the Florida long-arm statute applies and then show that the Court's exercise of personal jurisdiction over the nonresident defendant comports with the Fourteenth Amendment's due process requirements. *Id.*

General jurisdiction "arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006); Fla. Stat. § 48.193(2). Florida's long-arm statute confers general jurisdiction over "[a] defendant who is engaged in **substantial and not isolated activity** within this state[.]" Fla. Stat. § 48.193(2) (emphasis added). "Florida courts construe 'substantial and not isolated activity' to mean

'continuous and systematic business contact'" with the state. *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1326 (M.D. Fla. 2017), *judgment entered*, No. 8:16-CV-2966-T-36MAP, 2018 WL 10096593 (M.D. Fla. Jan. 8, 2018), *and aff'd sub nom. Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019) (citing *Caiazzo v. Am. Royal Arts Corp.*, 73 So.3d 245, 250 (Fla. 4th DCA 2011)) (emphasis added).

Plaintiff's Complaint fails to allege what "continuous and systematic business contact" the News Media Defendants (or any Defendant) had with Florida. Therefore, the Complaint fails to plead general jurisdiction.

"[S]pecific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n.3 (internal citation omitted); Fla. Stat. § 48.193(1)(a). "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan v. Roman Cath. Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (citing *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)).

But again, the Complaint fails to allege *any* activity by the News Media Defendants (or any Defendant) in Florida. Therefore, the Complaint fails to allege specific jurisdiction.

For these reasons, the Complaint fails to allege personal jurisdiction over the News Media Defendants (and all other Defendants). Because Plaintiff did not meet his burden

of showing that the requirements of Florida's long-arm statute were met, it is not necessary to address due process considerations. *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1295 (S.D. Fla. 2021) ("Because there are no grounds for specific jurisdiction under Fla. Stat. § 48.193(1)(A)(1), the Court once again foregoes the Due Process analysis.").

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** the Complaint [ECF No. 1] as to the News Media Defendants under Rule 12(b)(2) for failure to allege personal jurisdiction.

### 2. TEGNA is Not a Proper Defendant

Next, the News Media Defendants argue that TEGNA is not a proper defendant to this action. They note that the Complaint alleges only that "TEGNA INC. is the Owner Operator of defendant KREM2 TV STATION" [ECF No. 1, ¶ 25] and that "[u]nder Florida law, a parent company and its subsidiaries are separate and distinct legal entities." [ECF No. 25, p. 11 (quoting *Turner v. Homestead Police Dep't*, 828 F. App'x 541, 544 (11th Cir. 2020) (internal quotation marks omitted))].

"A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising [it]." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). Under Florida law, to disregard the corporate fiction and hold the corporation's owners liable -- to "pierce the corporate veil" -- a plaintiff must establish that:

16

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (applying Florida law) (internal citations and emphasis omitted).

To successfully plead a veil-piercing claim, a party "must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose." *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265 (S.D. Fla. 2011) (finding that the counter-plaintiff alleged the necessary elements of a veil-piercing claim by alleging that the plaintiff and the parent company were not kept "at an arm's length;" that the plaintiff "blurred the lines between the two corporations" by having the parent manage the plaintiff and by sharing a principal place of business; and that the plaintiff was used "for a fraudulent purpose by using it to mislead creditors" and shield the parent company from liability); *see also Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1149668, at *6 (S.D. Fla. Mar. 19, 2013) (rejecting argument "that [the] [p]laintiff's allegations are nothing but threadbare recitations of the requirements for piercing the

corporate veil, and as such must be disregarded," where the plaintiff alleged that the defendant entities had one sole owner and were used as a mere instrumentality or alter ego of the individual defendant and engaged in improper conduct).

Moreover, when analyzing a veil-piercing claim under a motion to dismiss, a court must take stock that "[t]he issue is not whether [the plaintiff] may ultimately prevail on the 'piercing the corporate veil' theory, but whether the allegations are sufficient to allow [him] to conduct discovery in an attempt to prove [his] allegations." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579–80 (11th Cir. 1986).

Here, the Complaint fails to allege *any* facts which would support piercing the corporate veil and holding Defendant TEGNA liable for the acts or omissions of KREM. *See, e.g., Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC*, No. 13-24342-CIV, 2014 WL 11906611, at *4–5 (S.D. Fla. Mar. 10, 2014) (listing "[e]xamples of improper conduct" such as "using a corporation . . . as a subterfuge to mislead or defraud creditors, to hide assets, to evade the requirements of a statute or some analogous betrayal of trust." (citation omitted)). Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** TEGNA because the Complaint fails to allege any facts which support veil piercing.

### 3.      Failure to State a Claim

The News Media Defendants also seek to dismiss the claims against them (Counts Two through Four) for failure to state a claim under Rule 12(b)(6). For the reasons discussed below, they are entitled to this relief.

### a.      Infliction of Emotional Distress (Count Two)

The News Media Defendants argue that Plaintiff's infliction of emotional distress claim should be dismissed because it arises out of the same facts as Plaintiff's defamation/libel *per se* claims. [ECF No. 25, pp. 15–16]. Florida's single publication/single action rule "prohibits defamation claims from being re-characterized in additional, separate counts for [*e.g.*,] libel, slander, or the intentional infliction of emotional distress if the claim arises from the same publication." *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *11 (S.D. Fla. Jan. 23, 2015) (alteration in original citation and internal quotation marks omitted). Here, the single publication/single action rule bars Plaintiff's infliction of emotional distress claim because it is premised on the same allegedly defamatory reporting and publication which underlie Plaintiff's defamation and libel *per se* claims.

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss Count Two** of the Complaint because it is barred by Florida's single publication/single action rule.

b.        **Defamation (Count Three) and Libel *Per Se* (Count Four)**

The News Media Defendants state that Counts Three and Four are duplicative claims, noting that "[d]efamation encompasses both libel and slander[.]" [ECF No. 25, p. 11 (quoting *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 n.2 (S.D. Fla. 2014))]. They also argue that these claims fail because Plaintiff did not provide pre-suit notice as required by Fla. Stat. § 770.01. *Id.* at 12. Lastly, they argue that these claims are due to be dismissed because the Complaint does not identify any specific statement(s) which are purportedly false and defamatory and that they are protected by the fair report privilege.

Most of the News Media Defendants' arguments are well taken. **First**, Counts Three and Four are duplicative and one of these claims should be dismissed on this ground. *See Klayman*, 22 F. Supp. 3d at 1256 ("When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event.").

**Second**, Plaintiff failed to show compliance with Florida's pre-suit notice requirement, which states that:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

Fla. Stat. § 770.01.

Here, the Complaint makes *no* allegations of pre-suit notice. "Failure to comply with the notice provisions of section 770.01 requires dismissal for failure to state a cause of action." *Trump Media & Tech. Grp. Corp. v. WP Co. LLC*, No. 8:23-CV-1535-TPB-AAS, 2024 WL 1013188, at *9 (M.D. Fla. Mar. 8, 2024) (citing *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 357 (Fla. 3d DCA 2020)).

**Third**, Plaintiff's Complaint fails to specify the allegedly defamatory statement(s) made by the News Media Defendants. It merely alleges that they reported "false charges" and published "defamatory articles":

> 55.     That defendant, Washington State Department of Health [sic] **false charges** were **reported** on defendant KREM2 Television Station, on You[T]ube and [s]ocial media platforms on June 22, 2022 through June 24, 2022 by defendant Reporter PATRICK HENKELS.
>
> 56.     That defendant, PATRICK HENKELS also published **defamatory articles** on [T]witter and all other social media platforms including [G]oogle.

[ECF No. 1, ¶¶ 55–56 (emphasis added)]. "Specific information must be provided to support the[ ] elements [of a defamation claim] such as the identify [sic] of the speaker, the identity of the persons spoken to, the substance of the statements, and a time frame when the statements were made." *Woodhull v. Mascarella*, No. 1:08CV151-SPM/AK, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009).

However, concerning the fair report privilege, the Undersigned does not have sufficient information to make a recommendation on whether the privilege applies. "The fair report privilege grants journalists and news media a qualified privilege to report on

information received from government officials or to publish the contents of official documents, as long as the account is 'reasonably accurate and fair.'" *Grayson v. No Labels, Inc.*, No. 620CV1824ORL40LRH, 2021 WL 2869870, at *3 (M.D. Fla. Jan. 26, 2021) (quoting *Larreal v. Telemundo of Fla., LLC*, No. 19-22613-Civ, 2020 WL 5750099, at *7–8 (S.D. Fla. Sept. 25, 2020)).

Thus, to the extent the News Media Defendants relayed a "substantially correct account of information contained in public records or derived from a government source," the fair report privilege would apply. *Grayson v. No Labels, Inc.*, No. 620CV1824ORL40LRH, 2021 WL 2869870, at *3 (M.D. Fla. Jan. 26, 2021). But, because Plaintiff does not identify the statement(s) made by the News Media Defendants which he contends are false and defamatory, the Undersigned does not have sufficient information to determine whether the privilege applies.

The News Media Defendants attached the news article they believe is the subject of Counts Three and Four as an exhibit to their motion. The Undersigned acknowledges Eleventh Circuit caselaw which states that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But here, Plaintiff has

done the opposite. His nebulous, unspecified reference to "false charges" and "defamatory articles" is in fact a ground on which the News Media Defendants have moved to dismiss.

Given the lack of specificity in Plaintiff's Complaint, the Court cannot be certain that the exhibit filed by the News Media Defendants is in fact the article referenced in Counts Three and Four (or that there are no other articles that are the subject of these counts). Thus, the Court is without sufficient information to determine whether the fair report privilege supplies an additional ground for dismissing Counts Three and Four. Nonetheless, Counts Three and Four of the Complaint should be dismissed for the other reasons identified above.

In sum, the Undersigned **respectfully recommends** that the District Court **dismiss Count Three** and **Four** of the Complaint because: (1) these claims are duplicative and only one should be asserted; (2) Plaintiff has failed to plead compliance with section 770.01's notice requirement; and (3) the Complaint fails to identify with specificity the allegedly defamatory statement(s).

### 4.    Attorney's Fees under Florida's Anti-SLAPP Law

Lastly, the News Media Defendants ask for attorney's fees under Florida's Anti-SLAPP law. They argue that "the claims alleged against [them] were filed without merit" and were filed primarily because the News Media Defendants exercised their

constitutional right of free speech in connection with a public issue. [ECF No. 25, p. 17 (internal quotation marks omitted)].

Plaintiff's response [ECF No. 37] does not directly address the News Media Defendants' fee request. Thus, this fee request is unopposed. *See Vesselov v. Harrison*, No. 23-80791, 2024 WL 536061, at *5 (S.D. Fla. Jan. 4, 2024) ("As an initial matter, [the] [p]laintiffs' [r]esponse brief fails to address [d]efendants' position that they are entitled to recover their attorneys fees. I will therefore construe the [d]efendants' argument as unopposed.").

Under Florida's anti-SLAPP statute,

[a] person . . . may not file . . . any lawsuit. . . against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

Fla. Stat. § 768.295(3). The statute defines "[f]ree speech in connection with public issues" to "mean[ ] any written or oral statement that is protected under applicable law and . . . is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *Id.* § 768.295(2)(a).

It provides that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* at § 768.295(4). "To claim these entitlements, a moving defendant must

make two showings: that the action is 'without merit' and that it was filed 'primarily' because the defendant exercised a protected right." *Markle v. Markle*, No. 8:22-CV-511-CEH-TGW, 2023 WL 2711341, at *14 (M.D. Fla. Mar. 30, 2023).

Here, the News Media Defendants' fee request is premature. In *Barbuto v. Miami Herald Media Co.*, the plaintiff (like Plaintiff here) failed to address the defendant's request for fees under Florida's anti-SLAPP statute asserted in a motion to dismiss. No. 21-CV-20608, 2021 WL 4244870, at *4 (S.D. Fla. Sept. 17, 2021). "Nevertheless, . . . the Court [did] not agree that [the] [d]efendant [was] entitled to an award of fees and costs at [that] juncture because the Court ha[d] not addressed the merits of [the] [p]laintiff's claims, nor ha[d] the Court made the finding that [p]laintiff's lawsuit as a whole [was] without merit." *Id.*

Similarly here, at this preliminary stage in the proceedings, the Court is without sufficient information to determine whether the News Media Defendants are entitled to fees under Florida's anti-SLAPP statute. Notably, it is unclear from the allegations in Plaintiff's Complaint which publication or publications Plaintiff is referring to in his claims against the News Media Defendants. Thus, the Court should **deny without prejudice** and **with leave to renew** (if appropriate) the News Media Defendants' anti-SLAPP fee request until after a merits-based determination has been made.

**B.      Google's Motion to Dismiss [ECF No. 34]**

Google moves to dismiss with prejudice Plaintiff's claims against it under Rule 12(b)(6). [ECF No. 34]. Plaintiff attempts to assert claims against Google for infliction of emotional distress (Count Two), defamation (Count Three), and libel *per se* (Count Four). *Id.* Google seeks to dismiss those claims pursuant to 47 U.S.C. § 230. *Id.* at 6.[8] Additionally, it states that "Plaintiff's threadbare allegations come nowhere close to stating a claim against Google." *Id.* For the reasons discussed below, Google is entitled to dismissal of Plaintiff's claims on both grounds.

**1.      Failure to State a Claim**

As to Google, the Complaint alleges that:

23.      That [D]efendants used YouTube internet social media, Google is [sic] internet search engine.

***

51.      That [D]efendant, the Washington State Department of Health on June 22,2022 knowingly and intentionally made false public statements by news release on Google, by using its ".gov" site against the [P]laintiff and falsely reported that during inspection of [P]laintiffs [sic] Dental Practice problems were found.

***

55.      That [D]efendant, Washington State Department of Health false charges were reported on defendant KREM2 Television Station, on

---

[8]      Some documents filed in this case contain two sets of page numbers. For consistency and to avoid confusion, in this Report and Recommendations, the Undersigned cites to the page numbers automatically assigned by the Court's CM/ECF system, appearing at the top, right-hand corner of each page.

You[T]ube and [s]ocial media platforms on June 22, 2022 through June 24, 2022 by [D]efendant Reporter PATRICK HENKELS.

56.    That defendant, PATRICK HENKELS also published defamatory articles on [T]witter and all other social media platforms including [G]oogle.

[ECF No. 1, ¶¶ 23, 51, 55, 56].

On the bases of these sparse allegations, Plaintiff seeks to hold Google liable for infliction of emotional distress (Count Two), defamation (Count Three), and libel *per se* (Count Four). But, as Google notes, the Complaint ''does not allege that *Google* engaged in any relevant conduct, beyond operating Google Search (which allows the public to find third-party websites) and YouTube (which allows third-parties to upload videos for public viewing)." [ECF No. 34, p. 7 (emphasis in original)].

### a.    Infliction of Emotional Distress (Count Two)

To state a claim for intentional infliction of emotional distress ("IIED") under Florida law, "a plaintiff must plead . . . 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress." *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017).

Under the first element, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree," that it is considered "atrocious and utterly intolerable in a civilized community." *Paylan v. Devage*, No. 8:15-CV-1366-T-36AEP, 2019

WL 9667696, at *9-11 (M.D. Fla. Mar. 12, 2019), *aff'd sub nom. Paylan v. Dirks*, 847 F. App'x

595 (11th Cir. 2021). "Whether a claim pleads conduct sufficiently outrageous to support

a claim of IIED is a question of law . . . and is measured by an objective standard; the

subjective response of the person who allegedly suffered emotional distress does not

control." *Piccolo v. Piccolo*, No. 15-CV-62463, 2016 WL 9526494, at *3 (S.D. Fla. May 6,

2016). Moreover, "[a] plaintiff cannot transform a defamation action into a claim for

intentional infliction of emotional distress simply by characterizing the alleged

defamatory statements as 'outrageous.'" *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1278

(S.D. Fla. 2020) (citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)).

      Here, Plaintiff's claim fails because he has not pled extreme and outrageous

conduct by Google. Plaintiff's Complaint merely alleges that: (1) the Department of

Health published on its ".gov" website (which is accessible through Google) a

purportedly false report; (2) Defendants KREM2 and Henkels reported the "false

charges" on a television station, YouTube, and social media platforms; and (3) Defendant

Henkels "also published defamatory articles on [T]witter and all other social media

platforms including [G]oogle." [ECF No. 1, ¶¶ 51, 55, 56].

      There is nothing outrageous or extreme in Google (a search engine) allowing the

general public to gain access to information on the Department of Health's website or to

access this information through social media platforms. Nor is there anything outrageous

or extreme in YouTube (a website which hosts videos uploaded by third-parties) allowing a video (or videos) of a news report to be uploaded and viewed on its website.

Plaintiff also fails to plead the second element of this claim: "an intent to cause, or reckless disregard to the probability of causing, emotional distress." *Broberg*, 303 F. Supp. 3d at 1317. There are no allegations that Google (or YouTube) were aware of Plaintiff (or of the alleged defamatory statement(s)), let alone acted in reckless disregard or with intent to cause emotional distress to Plaintiff.

For these reasons, Plaintiff has failed to plead a cause of action for IIED as to Google (and YouTube). Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss Count Two** of the Complaint as to these Defendants for failure to state a claim.

### b.    Defamation (Count Three) and Libel *Per Se* (Count Four)

Plaintiff also fails to plead defamation and libel *per se* claims against Google. As already noted in this Report and Recommendations, Count Four is duplicative of Count Three and should be dismissed for this reason. *See Klayman*, 22 F. Supp. 3d at 1256 ("When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event.").

Moreover, Count Three fails to state a defamation claim against Google. A defamation claim under Florida law contains "the following elements: (1) publication; (2)

falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Moon & Star Logistics, LLC v. Direct Traffic Sols., Inc.*, No. 23-CV-81300-RLR, 2023 WL 9283969, at *2 (S.D. Fla. Dec. 20, 2023), *report and recommendation adopted*, No. 23-CV-81300, 2024 WL 167392 (S.D. Fla. Jan. 16, 2024) (citation and internal quotation marks omitted).

Here, the Complaint contains *no* allegations that Google (or YouTube) acted negligently. In fact, to the extent that they can be gleaned from the Complaint, the purported actions of Google and YouTube are no different with respect to Plaintiff as they are to the millions of people globally who use Google to access websites and YouTube to upload and/or view videos. And, as Google notes in its motion, "[Plaintiff] does [not] allege any facts suggesting that Google had a duty to verify the truth of all third-party content on its global networks." [ECF No. 34, pp. 14–15].

Google also seeks to dismiss Count Three on the ground that it is subject to the neutral reporting privilege but acknowledges that "the neutrality of the statements is not as clear as in other cases where the privilege applied on the pleadings" "due to the conclusory nature of the Complaint." [ECF No. 34, p. 15 n.6]. Because there are other grounds for dismissing Count Three, it is not necessary for the Court to decide, at this

juncture, whether the neutral reporting privilege provides an additional ground for dismissing Count Three.[9]

For these reasons, the Undersigned **respectfully recommends** that the District Court **dismiss Counts Three** and **Four** of the Complaint as to Google because: (1) these claims are duplicative and only one should be asserted and (2) the Complaint fails to allege any facts showing that Google acted negligently as to the allegedly defamatory statement(s).

> **2.   Section 230**

Google also argues that Plaintiff's claims are barred under section 230 of the Communications Decency Act ("CDA"). Section 230 states, in part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "The CDA preempts state law that is contrary to this subsection." *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *1 (11th Cir. June 12, 2023) (citing 47 U.S.C. § 230(e)). The purpose of the act is "to 'promote the continued development of the Internet and other interactive computer services' and to 'preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services[.]'" *Woodhull*

---

[9]     To the extent Google argues that "the conclusory nature of the Complaint" provides "an independent basis for dismissal," [ECF No. 34, p. 15 n.6], [t]hat argument was improperly made in a footnote and raised in a cursory manner. *See Sony Music Ent.*, 2022 WL 4771858, at *13. Therefore, the Undersigned will not address it here.

*Freedom Found. v. United States*, 72 F.4th 1286, 1293 (D.C. Cir. 2023) (quoting 47 U.S.C. §§

230(b)(1)–(2)).

To qualify for section 230 immunity, "a defendant must show that: (1) it is a

provider . . . of an interactive computer service; (2) the claim is based on information

provided by another information content provider; and (3) the claim would treat the

defendant as the publisher or speaker of that information." *Albert v. Tinder, Inc.*, No. 22-

60496-CIV, 2022 WL 18776124, at *10 (S.D. Fla. Aug. 5, 2022) (citation and internal

quotation marks omitted).

Applying this three-part test, the Undersigned concludes that Plaintiff's claims

against Google are barred by the CDA. Google is a provider of interactive computer

services. The CDA defines the term "interactive computer service" to mean "any

information service, system, or access software provider that provides or enables

computer access by multiple users to a computer server, including specifically a service

or system that provides access to the Internet[.]" 47 U.S.C. § 230(f)(2).

There can be no dispute that Google (and YouTube) fit within this definition.

Moreover, other courts have reached the same conclusion. *See, e.g., O'Kroley v. Fastcase,*

*Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) ("**Google** is an interactive computer service, an entity

that provides 'access by multiple users to a computer server.'" (quoting 47 U.S.C. §

230(f)(2) (emphasis added)); *Woodhull Freedom Found.*, 72 F.4th at 1293 (D.C. Cir. 2023)

("Section 230 of the Act immunizes providers of [ ] computer services—like **YouTube**,

Facebook, and Craigslist—from liability for content that is posted on their sites by third[-]parties." (emphasis added)); *Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 283 (D.D.C. 2018), *aff'd sub nom. Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019) ("By presenting Internet search results to users in a relevant manner, **Google**, Yahoo, and Microsoft facilitate the operations of every website on the internet. The CDA was enacted precisely to prevent these types of interactions from creating civil liability for the [p]roviders." (emphasis added)); *Shuler v. Duke*, No. 2:16-CV-0501-VEH, 2018 WL 2445685, at *10 (N.D. Ala. May 31, 2018), *aff'd*, 792 F. App'x 697 (11th Cir. 2019) (finding defamation claim against **Google** "barred by Section 230 of the [CDA]").

Moreover, each claim against Google arises from activities that fall within a publisher's traditional functions. "What matters in this analysis 'is not the name of the cause of action,' but 'whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another.'" *Divino Grp. LLC v. Google LLC*, No. 19-CV-04749-VKD, 2022 WL 4625076, at *16 (N.D. Cal. Sept. 30, 2022), *reconsideration denied*, No. 19-CV-04749-VKD, 2023 WL 218966 (N.D. Cal. Jan. 17, 2023) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009), *as amended* (Sept. 28, 2009)). "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or

speaker.[10] If it does, section 230(c)(1) precludes liability." *Id.* (citing *Barnes*, 570 F.3d at 1102 (internal quotation marks omitted)).

Here, the Complaint alleges that Google merely displayed information posted by a third-party (or third-parties) -- the Washington State Department of Health and/or the News Media Defendants. [ECF No. 1, ¶¶ 23, 51, 55, 56]. This is insufficient to hold Google liable. *See O'Kroley*, 831 F.3d at 355 (finding section 230 immunity applied where "all of [the plaintiff]'s claims treat Google as the publisher or speaker of the allegedly defamatory content on its website, even though a separate 'entity [was] responsible . . . for the [content's] creation.'" (quoting 47 U.S.C. § 230(f)(3)); *Getachew v. Google, Inc.*, 491 F. App'x 923, 926 (10th Cir. 2012) (stating that under section 230, "Google cannot be held liable for search results that yield content created by a third[-]party"); *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-CV-4126-SLB, 2014 WL 4452679, at *7 (N.D. Ala. Sept. 8, 2014) ("If a website displays content that is created entirely by third[-]parties, then it is only a service provider with respect to that content—and thus is immune from claims predicated on that content.").

In sum, Plaintiff's claims (Counts Two through Four) as pled in the Complaint [ECF No. 1] fail to state a claim against Google and are barred by section 230 of the CDA.

---

[10]     "A defendant acts as a publisher when it 'decid[es] whether to publish, withdraw, postpone or alter content.'" *Albert*, 2022 WL 18776124, at *10 (quoting *Dowbenko v. Google Inc.*, 582 F. App'x, 801, 805 (11th Cir. 2014)).

For these reasons, the Undersigned **respectfully recommends** that the District Court **dismiss Counts Two through Four** of the Complaint as to Google (and YouTube).

### C.    County Defendants' Motion to Dismiss [ECF No. 39]

The County Defendants seek the dismissal of Plaintiff's Complaint for lack of personal jurisdiction and improper venue.[11] [ECF No. 39]. They argue that the Court lacks personal jurisdiction over them

> because (1) they are residents of the State of Washington, (2) all acts giving rise to Plaintiff's claims against them occurred in the State of Washington, (3) there are insufficient minimum contacts between [them] and the State of Florida, and (4) this Court's assertion of jurisdiction over [them] would offend traditional notions of fair play and substantial justice.

*Id.* at 1.

The County Defendants note that paragraphs 8 through 10 of the Complaint allege that the County Defendants are Washington residents. *Id.* at 2. They further note that all of the County Defendants' acts alleged in the Complaint occurred between November 16, 2021 and December 3, 2021, when Plaintiff was still residing in Washington. *Id.* (citing [ECF No. 1, ¶¶ 35–46]).

---

[11]    Defendants raise improper venue as an alternative argument. [ECF No. 39, p. 11 ("If the Court agrees with the [County] Defendants that personal jurisdiction over them is nonexistent, the Court should dismiss the case on that basis and need not reach the question of whether venue is proper.")]. Therefore, it is not necessary to address their venue argument, because Plaintiff has failed to plead facts which would establish this Court's personal jurisdiction over the nonresident County Defendants.

As noted above, a Court must have either general or specific jurisdiction over a nonresident defendant. General jurisdiction "arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated." *Stubbs*, 447 F.3d at 1360 n.3; Fla. Stat. § 48.193(2). The Florida long-arm statute confers general jurisdiction over "[a] defendant who is engaged in **substantial and not isolated activity** within this state[.]" Fla. Stat. § 48.193(2) (emphasis added). "Florida courts construe 'substantial and not isolated activity' to mean 'continuous and systematic business contact'" with the state. *Hinkle*, 268 F. Supp. 3d at 1326. Here, the Complaint fails to allege what "continuous and systematic business contact" the County Defendants had with Florida. Therefore, the Complaint fails to plead general jurisdiction.

The Complaint also fails to plead specific jurisdiction. "[S]pecific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n.3 (internal citation omitted); Fla. Stat. § 48.193(1)(a). Here, there are no allegations that the County Defendants engaged in *any* activities in Florida and *all* of their alleged activities took place in Washington. [ECF No. 1, ¶¶ 35–46].

Since Plaintiff failed to meet his burden of showing that the requirements of Florida's long-arm statute were met, it is not necessary to address due process considerations. *See Ferenchak*, 572 F. Supp. 3d at 1295 ("Because there are no grounds for

specific jurisdiction under Fla. Stat. § 48.193(1)(A)(1), the Court once again foregoes the Due Process analysis.").

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** the Complaint [ECF No. 1] as to the County Defendants under Rule 12(b)(2) for failure to plead personal jurisdiction.

### D.      Delta Dental's Motion to Dismiss [ECF No. 55]

Delta Dental moves to dismiss the Complaint with prejudice [ECF No. 1] on the following grounds: (1) lack of personal jurisdiction; (2) improper shotgun pleading; (3) failure to state a claim; and (4) Health Care Quality Improvement Act Immunity. [ECF No. 55]. In support of its motion, Delta Dental filed the declaration of Elizabeth Peterson, its senior counsel. [ECF No. 55-1]. As noted above, Plaintiff failed to respond to this motion. Nonetheless, the Undersigned will address Delta Dental's arguments below.

#### 1.      Lack of Personal Jurisdiction

Delta Dental argues that this Court lacks personal jurisdiction over it. [ECF No. 55, pp. 4–9]. It notes that "Delta Dental [ ] is solely based in the state of Washington and is only licensed to provide dental insurance in the State of Washington." [ECF No 55, p. 5]. The Complaint similarly alleges that Delta Dental "is a dental insurance company under the laws of Washington State." [ECF No. 1, ¶ 27].

Ms. Peterson's declaration[12] attests that "Delta Dental . . . is a Washington non-profit corporation with its principal place of business located in Seattle, Washington." [ECF No. 55-1, ¶ 2]. "[It] provides dental insurance plans to employers [who are Washington companies] for use by its [sic] employees [who are Washington residents], as well as to individuals and families [who are also Washington residents] through individual and family plans." *Id.* at ¶ 4.

Based on the Complaint's lack of any jurisdictional allegations which would support either general or specific jurisdiction under Florida's long-arm statute and the unrefuted facts in Ms. Peterson's declaration, the Undersigned concludes that this Court does not have personal jurisdiction over Delta Dental.

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** the Complaint [ECF No. 1] as to Delta Dental under Rule 12(b)(2) for failure to plead personal jurisdiction.

## 2. Shotgun Pleading

Delta Dental also moves to dismiss the Complaint on the ground that it is a shotgun pleading. [ECF No. 55, pp. 9–12]. The Eleventh Circuit has stated that the purpose of Federal Rules of Civil Procedure 8 and 10 is to "require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is

---

[12]    As noted above, on a Rule 12(b)(2) motion to dismiss, the Court may consider affidavits, declarations, or other written documents. *See Healthe, Inc.*, 533 F. Supp. 3d at 1124.

claiming and frame a responsive pleading." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th

Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir.

2015)). Complaints that violate Rule 8 or Rule 10 are termed "shotgun pleadings," and

the Eleventh Circuit has consistently condemned such pleadings for more than three

decades. *See Davis v. Coca-Cola Bottling Co. v. Consol*, 516 F.3d 955, 979–80 & n.54 (11th Cir.

2008) (collecting cases) (abrogated on other grounds).

> There are four types of shotgun pleadings:

> The most common type—by a long shot—is a **complaint containing
> multiple counts where each count adopts the allegations of all preceding
> counts, causing each successive count to carry all that came before and
> the last count to be a combination of the entire complaint**. The next most
> common type . . . is a complaint that does not commit the mortal sin of re-
> alleging all preceding counts but is guilty of the venial sin of being replete
> with conclusory, vague, and immaterial facts not obviously connected to
> any particular cause of action. The third type of shotgun pleading is one
> that commits the sin of not separating into a different count each cause of
> action or claim for relief. **Fourth, and finally, there is the relatively rare sin
> of asserting multiple claims against multiple defendants without
> specifying which of the defendants are responsible for which acts or
> omissions, or which of the defendants the claim is brought against**.

*Weiland*, 792 F.3d at 1321–23 (footnotes omitted; emphasis added).

"The Eleventh Circuit has repeatedly and unequivocally condemned shotgun

pleadings as a waste of judicial resources." *Finch v. Carnival Corp.*, No. 23-CV-21704, 2023

WL 7299780, at *4 (S.D. Fla. Nov. 6, 2023). "Shotgun pleadings, whether filed by plaintiffs

or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and

unchanneled discovery, and impose unwarranted expense on the litigants, the court and

the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Id.* (quoting *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018)).

Delta Dental argues that Plaintiff's Complaint violates the fourth type of shotgun pleading (*i.e.*, it lumps together multiple Defendants in multiple claims without indicating what each Defendant did or failed to do). Specifically, it points out that in Count Two (Infliction of Emotional Distress), "Plaintiff fails to allege what each [D]efendant did, when they did it, and how each [D]efendant was allegedly responsible for causing [ ] Plaintiff emotional distress" and "[t]here are no allegations in particular regarding Delta Dental[.]" [ECF No. 55, p. 11].

They also note that in Count Three (Defamation), "Plaintiff fails to state the actions of each individual [D]efendant which allegedly committed defamation and how each . . . [D]efendant[ ] [was] responsible for defaming the good reputation of [ ] Plaintiff by sharing the information among themselves or with the news media" and "there are no allegations in particular regarding Delta Dental in this Count." *Id.*

Additionally, the Complaint incorporates by reference each preceding paragraph. *See* [ECF No. 1, ¶¶ 71, 77, 81, 84 ("[P]laintiff incorporate[s] all above reference paragraphs as though fully set forth herein[.]")]. Thus, the Complaint also contains the "most common type" of shotgun pleading because "each count adopts the allegations of all

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire [C]omplaint." *Weiland*, 792 F.3d at 1321.

The Undersigned agrees with Delta Dental that Plaintiff's Complaint [ECF No. 1] is due to be dismissed as an impermissible shotgun pleading. A district court's inherent authority to control its docket includes the ability to dismiss a complaint on shotgun pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citing *Weiland*, 792 F.3d at 1320). The Eleventh Circuit has also noted that district courts should require a plaintiff to replead a shotgun complaint even when the defendant does not seek such relief. *See Hirsch v. Ensurety Ventures, LLC*, No. 19-13527, 2020 WL 1289094 at *3 (11th Cir. Mar. 18, 2020).

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** the Complaint [ECF No. 1] in its entirety as a shotgun pleading.

### 3. Failure to State a Claim

Delta Dental also seeks to dismiss Counts Two through Four under Rule 12(b)(6) for failure to state a claim.

### a. Infliction of Emotional Distress (Count Two)

Delta Dental argues that Count Two should be dismissed "because it does not plead the elements of the claim required to state a cause of action" and "does not describe any particular act of Delta Dental which allegedly caused emotional distress." [ECF No. 55, p. 12]. The Undersigned agrees with Delta Dental that Count Two should be dismissed

41

on this ground. As Delta Dental points out, the Complaint "does not plead how Delta Dental's conduct was intentional or reckless, extreme or outrageous, how it caused such emotional distress, and that the emotional distress was severe." *Id.* at 13.

Additionally, and as noted above, the Complaint fails to allege extreme and outrageous conduct by Delta Dental. It alleges that Delta Dental "falsely reported the Department of Health defamatory information against [ ] [P]laintiff to the National Practitioners Data Bank." [ECF No. 1, ¶ 57]. But Florida courts have deemed similar conduct to be insufficient to support an IIED claim. *See, e.g., Piccolo*, 2016 WL 9526494, at *3 (dismissing IIED counterclaim which alleged that the plaintiff made "false statements to police"); *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. 3d DCA 2006) (no IIED claim stated where "the appellees' behavior in investigating [the appellant] and then allegedly falsely reporting to the Division of Insurance that [the appellant] had committed fraud is not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society").

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss Count Two** for failure to state a claim.

### b.    Defamation (Count Three) and Libel *Per Se* (Count Four)

Delta Dental also argues that Counts Three and Four should be dismissed because they fail to plead the proper elements of each claim. It notes that Count Three pleads

"defamation in a conglomerated claim against all Defendants without specifying the actions of any Defendant, including Delta Dental" and "does not allege that Delta Dental's reporting of Plaintiff's suspension is a publication or provide facts that support [that] Delta Dental acted with the requisite intent or negligence in reporting [Plaintiff's] suspension to a third-party." [ECF No. 55, pp. 14–15].

As to Count Four, Delta Dental argues that "Plaintiff fails to plead ultimate facts addressing the elements for libel *per se* against Delta Dental" and "does not plead that Delta Dental published a false statement when they reported his license suspension to a third[-]party which 'tends to injure one in his trade or profession.'" *Id.* at 16 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)).[13]

The Undersigned agrees with Delta Dental that Plaintiff's Complaint fails to plead claims for defamation (Count Three) and libel *per se* (Count Four). The Undersigned has already discussed the pleading deficiencies in these counts in addressing the other motions to dismiss. Accordingly, the Undersigned **respectfully recommends** that the

---

[13]    The Florida Supreme Court has stated that:

> a publication is libellous *per se*, or actionable *per se*, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or **(4) it tends to injure one in his trade or profession**.

*Richard*, 62 So. 2d at 598 (emphasis added).

District Court **dismiss Counts Three** and **Four** of the Complaint as to Delta Dental for

failure to state claims.

### 4.    Health Care Quality Improvement Act Immunity

Delta Dental also moves to dismiss Plaintiff's Complaint (with prejudice) based on

the immunity provided by the Health Care Quality Improvement Act ("HCQIA"), 42

U.S.C. §§ 11101, *et. seq*.

"The HCQIA obligates 'health care entities' to report 'a professional review action

that adversely affects the clinical privileges of a physician for a period longer than 30

days' to the relevant state Board of Medical Examiners and to the Secretary of Health and

Human Services." *Alexander v. Hackensack Meridian Health*, No. CV 19-18287, 2020 WL

5810526, at *11 (D.N.J. Sept. 30, 2020) (quoting 42 U.S.C. §§ 11133(a)(1), 11134(b)) (footnote

omitted).

The HCQIA also states that "[n]o person or entity . . . shall be held liable in any

civil action with respect to any report made under this subchapter . . . without knowledge

of the falsity of the information contained in the report." 42 U.S.C.A. § 11137(c). Thus,

"HCQIA provides immunity where a health care entity issues a report pursuant to the

HCQIA and 'is *without* knowledge of the falsity of the information contained in the

report.'" *Alexander*, 2020 WL 5810526, at *12 (quoting 42 U.S.C. § 11137(c)) (emphasis

added).

44

Because it is conceivable (albeit unlikely) that Plaintiff *could* allege facts in a properly pled amended complaint which would take his claims outside the reach of HCQIA immunity, the Undersigned does not believe it is appropriate for this Court to rule, at this juncture, that Delta Dental is immune from liability under the HCQIA. *See, e.g., Bonzani v. Goshen Health Sys. Inc.,* No. 3:19-CV-586 DRL-MGG, 2022 WL 715548, at *11 (N.D. Ind. Mar. 10, 2022) ("Because Dr. Bonzani alleges that Goshen Health and Goshen Hospital knew about the misrepresentations, which the court must accept as true at [the motion to dismiss] stage, the court cannot say the report was made without actual malice as a matter of law, or that the report's submission qualifies for immunity under the HCQIA."); *Tucker v. Princeton Cmty. Hosp. Ass'n, Inc.,* No. CV 1:19-00227, 2020 WL 5831986, at *9 (S.D.W. Va. Sept. 30, 2020) (declining to find that defendants were immune under the HCQIA at the motion to dismiss stage where "it [was] reasonable to infer that the information provided to [the National Practitioners Data Bank] was false and that [the] defendants knew the information provided to [the National Practitioners Data Bank] was false.").

Accordingly, the Undersigned **respectfully recommends** that the District Court **deny** Delta Dental's HCQIA immunity claim at this time. [In making this recommendation, the Undersigned assumes, *arguendo*, that the HCQIA applies to Delta Dental's report to the National Practitioners Data Bank and makes no findings on the applicability (or inapplicability) of the HCQIA to this action.].

### E.     State Defendants' Motion to Dismiss [ECF No. 58]

The State Defendants move to dismiss the Complaint [ECF No. 1] for: (1) lack of

personal jurisdiction; (2) improper venue; (3) and failure to state a claim. [ECF No. 58].

### 1.     Lack of Personal Jurisdiction

The State Defendants move to dismiss Plaintiff's claims against them for lack of

personal jurisdiction. *Id.* at 9. They state that:

> Plaintiff has admitted through his Complaint that all State Defendants are
> either agencies in Washington, or employed by agencies in Washington.
> There is no support for presented [sic] that any [D]efendant resides in
> Florida. It is further noted that the Complaint does not allege any actions
> giving rise to the lawsuit occurred in Florida. Plaintiff has failed to show
> any facts which would give the Florida state courts personal jurisdiction
> over the State Defendants, and therefore, they should be dismissed from
> this lawsuit.

*Id.* at 10.

The Undersigned agrees with the State Defendants that the Complaint fails to

plead facts establishing personal jurisdiction over any Defendant for the reasons already

stated in this Report and Recommendations. Accordingly, the Undersigned **respectfully**

**recommends** that the District Court **dismiss** the Complaint [ECF No. 1] as to the State

Defendants under Rule 12(b)(2) for failure to allege personal jurisdiction.

### 2.     Improper Venue

The State Defendants also argue that the Southern District of Florida is an

improper venue for this action because no Defendant resides in Florida and no

substantial events related to the lawsuit occurred in this District. [ECF No. 58, ¶ 10]. They

46

ask that the Court transfer this action to the Eastern District of Washington "if [the Court] desires to avoid an outright dismissal of the action for being filed in an improper venue." *Id.*

Other than pointing out that venue is not proper in the Southern District of Florida under 28 U.S.C. § 1391(b), the State Defendants do not support their transfer request with any legal authority. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue).

For this reason, the Undersigned **respectfully recommends** that the District Court **deny without prejudice** the State Defendant's request for transfer. The State Defendants may file a motion to transfer (if they wish to pursue this relief) supported by <u>Eleventh Circuit</u> legal authority.

### 3.   Failure to State a Claim

#### a.   Section 1983 (Count One)

The State Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim should be dismissed for failure to state a claim because:

> Plaintiff makes a conclusory statement that he was discriminated against based on "sexual orientation," but he fails to provide the basis for such a conclusion. **There are no facts pled identifying the State Defendants' actions that constitute discrimination based on sexual orientation**. It is unclear if Plaintiff is alleging that the State Defendants were aware of his sexual orientation, but there are not any pled facts identifying the impact this had on the State Defendants' behavior.

[ECF No. 58, pp. 4–5 (emphasis added)].

The Undersigned agrees. In Count One, the Complaint alleges that:

73.    That [D]efendants did discriminate against [ ] [P]laintiff based on his sexual orientation.

74.    Defendants did knowingly and intentionally file and record reports [sic] containing false and defamatory information and charges against [ ] [P]laintiff.

75.    That the false defamatory reports as filed by [ ] [D]efendants against [ ] [P]laintiff caused [ ] [P]laintiff a deprivation of his due process rights and monetary damages including but not limited to loss of his dental practice and future employment.

[ECF No. 1, ¶¶ 73–75]. But there are no allegations that the State Defendants even knew of Plaintiff's sexual orientation or that the State Defendants made these purportedly false reports or engaged in other conduct *because* of Plaintiff's sexual orientation. There is nothing tying Plaintiff's sexual orientation to the actions of the State Defendants.

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss Count One** for failure to state a claim.

### b.    Eleventh Amendment Immunity

The State Defendants also argue that the Washington State Department of Health, the Board of Health, and their employees acting within the scope of their employment are immune from suit for money damages under the Eleventh Amendment. [ECF No. 58, pp. 5–6]. They assert that "an agency or its employees working in their official capacity are not 'persons' within the meaning of § 1983." *Id.* at 7. They state that "Plaintiff has only

pled facts that support [that the State Defendant individual employees] were operating within their official capacity or failed to mention specific facts attributable to them at all.

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies. . . . There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity." *Selensky v. Ala.*, 619 F. App'x 846, 848 (11th Cir. 2015) (citations and internal quotation marks omitted). "Washington State [ ] enjoys Eleventh Amendment immunity from constitutional claims brought in federal court pursuant to Section 1983." *French v. Wash. State Dep't of Health*, No. C15-0859JLR, 2017 WL 2226224, at *5 (W.D. Wash. May 22, 2017). Moreover, "Congress has not abrogated Eleventh Amendment immunity as to claims for money damages under the Due Process Clause of the Fourteenth Amendment or 42 U.S.C. § 1983." *Jasmin v. Fla.*, No. 23-CV-21063, 2024 WL 665678, at *6 (S.D. Fla. Jan. 29, 2024), *report and recommendation adopted*, No. 23-21063-CIV, 2024 WL 664542 (S.D. Fla. Feb. 16, 2024). "Eleventh Amendment immunity extends to state departments, agencies, boards, and commissions, and to state employees acting in their official capacity because a suit against them is regarded as a suit against the State itself." *French*, 2017 WL 2226224, at *4 (citation and internal quotation marks omitted).

Therefore, the Eleventh Amendment bars Plaintiff's § 1983 claim against the Washington State Department of Health, the Board of Health, and their employees acting in their official capacity. [To the extent Count One is seeking to assert a claim against any

state employee in their *non*-official capacity, this count is already due to be dismissed for failure to state a claim, as discussed in the preceding section.].

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss Count One** pursuant to the Eleventh Amendment.

**c.     Washington Tort Claims Reporting Process**

The State Defendants further seek to dismiss Plaintiff's state law claims (infliction of emotional distress, defamation, and libel *per se*) for failure to comply with the prefiling requirements of Revised Code of Washington ("RCW") 4.92, a Washington statute. [ECF No. 58, pp. 8–9]. But the State Defendants did not address whether the requirements of RCW 4.92 apply to a lawsuit filed in federal court in Florida.

Because the State Defendants failed to develop this argument, the Undersigned will not consider it. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); *CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 2:20-CV-867-JLB-KCD, 2023 WL 2930825, at *3 (M.D. Fla. Feb. 9, 2023)

50

("The Court is not an advocate. Rather, the Court relies on advocates to set forth legal arguments to support their requests.").

In any event, Plaintiff's state law claims (infliction of emotional distress, defamation, and libel *per se*) should be dismissed for the reasons already stated in this Report and Recommendations.

## IV.   Request for With-Prejudice Dismissal

The News Media Defendants, Google, and Delta Dental move for the with-prejudice dismissal of Plaintiff's claims. [ECF No. 25; 34; 55].

"[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021). "[A] *pro se* plaintiff must generally be given one chance to amend his complaint 'if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend.'" *Luecke v. Fla. Dep't of Child. & Fams.*, No. 6:21-CV-1657-CEM-DCI, 2021 WL 12141638, at *3 (M.D. Fla. Oct. 14, 2021) (*Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003)).

The Undersigned **respectfully recommends** that the District Court **dismiss** the Complaint [ECF No. 1] **without prejudice** and give Plaintiff an opportunity to correct his pleading deficiencies (if possible). *See Vibo Corp., Inc. v. U.S. Flue-Cured Tobacco Growers, Inc.*, No. 17-22034-CIV, 2018 WL 11149757, at *2 (S.D. Fla. Jan. 23, 2018) (granting leave to

51

amend where "[t]he Court [could not] determine with incontrovertible certainty that the motion to dismiss would have been granted or that a renewed motion to dismiss will be granted" and "[o]nly that level of certainty allows a district court to deny an amendment on futility grounds"); *Acosta v. Smart Ala., LLC*, No. 1:22-CV-1209-TWT, 2023 WL 2447597, at *4 (N.D. Ga. Mar. 10, 2023) (granting leave to amend where futility arguments "would be best addressed in a fully briefed, renewed motion to dismiss"); *Maultsby v. St. Petersburg Coll.*, No. 8:10-cv-2288-T-30TGW, 2011 WL 940468, at *1 (M.D. Fla. Mar. 17, 2011) (dismissing second amended complaint but providing *pro se* litigant with "one more chance" to amend).

## V.   Conclusion

The Undersigned **respectfully recommends** that Judge Becerra **grant in part** Defendants' dismissal motions [ECF Nos. 25; 34; 39; 55; 58] but **without prejudice** and with leave to file an amended complaint (if possible) within **twenty (20) days** from the issuance of an Order approving this Report and Recommendations.

**Note:** This Report and Recommendations does *not* conclude that Plaintiff in fact has viable factual and legal grounds for filing an amended complaint. It merely recommends that he be given the opportunity to do so *if* (and this is a big if) he can do so consistent with his obligations under Federal Rule of Civil Procedure 11. If he cannot, then (obviously) he should not file an amended complaint.

Plaintiff may not reassert causes of action against Google (or YouTube) if the only

actions alleged to be taken by them are that they provided access to the allegedly defamatory material(s) (created and posted/uploaded by others) through internet search results, on social media, or on YouTube's website because such claims are barred by 47 U.S.C. § 230. Plaintiff may also not assert monetary[14] claims under § 1983 against the Washington State Department of Health, the Washington State Board of Health, or state employees acting in their official capacity because such claims are barred by the Eleventh Amendment.

Additionally, Plaintiff must plead facts establishing venue and this Court's personal jurisdiction over each nonresident Defendant under Florida's long-arm statute, Fla. Stat. § 48.193. If Plaintiff cannot do this, then he should not file an amended complaint in the Southern District of Florida. Plaintiff is free to file a lawsuit in state or federal court in Washington.

In the interest of judicial economy and in light of the multiple Defendants named in this action, the Undersigned **respectfully recommends** that if more than one Defendant wishes to file a motion to dismiss an amended complaint, then the moving Defendants should be **required to file a single, joint motion**. If there are any arguments

---

[14] "Absent waiver or congressional abrogation, the Eleventh Amendment doctrine of sovereign immunity bars a money damages action against a state, a state agency, or a state employee in his or her official capacity." *Stephen-Vicens v. Perry*, No. 1:23CV264/MW/ZCB, 2024 WL 2176454, at *3 (N.D. Fla. Apr. 5, 2024), *report and recommendation adopted*, No. 1:23CV264-MW/ZCB, 2024 WL 2159950 (N.D. Fla. May 14, 2024) (citing *Cross v. Ala., Dep't of Mental Health*, 49 F.3d 1490, 1503 (11th Cir. 1995)).

that pertain to only one Defendant (or one group of Defendants), then that argument (or

arguments) should be included in a separate, clearly marked section of the joint motion

to dismiss. Plaintiff should be permitted to file only one (1) consolidated response and

the moving Defendants should be permitted to file a single optional reply.

## VI.     Objections

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendations within which to file written objections, if any, with

the District Judge. Each party may file a response to the other party's objection within

fourteen (14) days of the objection. Failure to timely file objections shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

contained in this Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*,

885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, May 28,

2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jacqueline Becerra
All Counsel of Record